IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| SUSAN FLEEGER, | ) |
| Plaintiff, | ) ) ) |
| v. | ) ) ) 2:03cv735 |
| ANTHONY J. PRINCIPI, SECRETARY OF VETERAN'S AFFAIRS, | ) ) ) ) |
| Defendant. | ) |

**MEMORANDUM OPINION AND ORDER**

Before the Court for consideration and disposition are the following:

• DEFENDANT'S MOTION FOR SUMMARY JUDGMENT (*Document No. 23*), with brief in support (*Document No. 24*) ("Motion" and Brief," respectively);

• PLAINTIFF'S BRIEF IN OPPOSITION TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT (*Document No. 27*);

• DEFENDANT'S REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF HIS MOTION FOR SUMMARY JUDGMENT (*Document No. 28*);

• PLAINTIFF'S REPLY TO DEFENDANT'S REPLY (*Document No. 30*).

After considering the filings of the parties, the evidence of record and the relevant statutory and case law, Defendant's Motion for Summary Judgment will be granted in part and denied in part.

Background

Plaintiff Susan Fleeger ("Fleeger") is a Registered Nurse who was employed at the VA Medical Center ("VA") in Butler, Pennsylvania. Def's Stmt. of Facts at ¶ 1.[1] Defendant

---

[1] *See Document 31*. Plaintiff has responded to Defendant's statement of undisputed material facts by filing Plaintiff's Opposition to Defendant's Local Rule 56.1 Statement. *See Document 33*. Attached to Plaintiff's Opposition is a copy of Defendant's statement of undisputed material facts with short handwritten (and barely legible) responses to the facts set forth therein. Plaintiff's responses are limited to "agreed," "denied," "not credible,"

Anthony J. Principi ("Defendant") is the Secretary of Veteran's Affairs. *Id*. at ¶ 2. On or about December 31, 2001 and January 4, 2002, Fleeger sent e-mails and letters to various public officials and federal agencies, including the President of the United States, Senator Rick Santorum and the Joint Commission on Accreditation of Healthcare Organizations. *Id*. at ¶ 6. The passage from the following e-mail, which was sent to the President of the United States, is representative of Fleeger's various e-mails and letters:

> Dear Mr. President:
> I really hope you get this message. I am a staff member of a V.A. Medical Center in Pa. I realize you have much bigger problems to attend to, but my coworkers and myself are very frustrated with the working conditions at our medical center.
> \*\*\*
> Every day, people work through their lunch breaks. Vacations are being denied due to staffing issues. If you ask for an extra day off, most times it is being denied. You cannot even trade with a co-worker because they are working also. We have take (*sic*) our concerns and issues up with the director of the medical center. He seemed to listen and care, however, since we complained, things have gotten worse.
> \*\*\*
> We try our best to take care of the men and women who fought for our country, but with no nursing personnel, it is getting harder. Our concerns are falling on deaf ears. Please do not allow this e-mail to fall on deaf ears.
> Sincerely yours,
> Susan E. Fleeger.

Pltf's Exh. 2.

On or about January 13, 2002, Fleeger was assigned to Transitional Care Unit-A at the VA. Def's Stmt. of Facts at ¶ 8. Janice Martin, R.N. ("Martin"), who was Fleeger's supervisor that evening, arrived on the Unit at or around 7:30 p.m. in response to a call from Fleeger *Id*. at ¶ 9; Martin Aff. at ¶ 3. Fleeger was involved in a confrontation/ disagreement with the family of a terminally ill cancer patient on the Unit. Def's Stmt. of Facts at ¶ 10. During the confrontation she became "upset" and had an "attitude" with the family members. *Id*. at ¶ 11. Fleeger also refused to follow Martin's order to leave the scene so that Martin could speak with the family members privately. *Id*. at ¶ 12. Additionally, Fleeger accused Martin of not supporting the

---

"punishment," "no investigation was done," "backdated," and "retaliation." Plaintiff's Opposition is deficient in that she has made no references whatsoever to any evidence of record to establish a genuine issue of material fact and attempts to create issue(s) of material fact from mere allegations and general denials.

2

nursing staff, refused to give nursing care to the patient, and told Martin that she would have to care for the patient herself. *Id*. at ¶ 14. Fleeger also threatened to abandon her post, gave her keys to the medication cart to Martin, and "told them to write me up if they wanted to." *Id*. at ¶¶ 15-16. Apparently Fleeger reconsidered her decision to leave, and thereafter "decided to stay [and] went to pass my meds." Defendant's exh. O.

The Medical Center Director determined that Fleeger's conduct could constitute patient abuse, and that the situation was serious enough to warrant an Administrative Board of Investigation ("ABI"). Def's Stmt. of Facts at ¶ 17. Whenever there is an allegation of patient abuse or neglect by a VA staff member and an ABI is convened, the standard operating procedure at the VA is to remove the employee from patient care pending the outcome of the investigation. *Id*. at ¶ 18. Once the decision was made to convene an ABI regarding Fleeger's conduct, she was notified by letter dated January 18, 2002 that she would be removed from patient care and re-assigned to the file room pending the outcome of the investigation. *Id*. at ¶ 19. While in the file room, Fleeger was not permitted to attend a nurse's in-service seminar, which she contends was retaliatory. *See* Fleeger depo. at 46.

On or about March 5, 2002, the ABI issued a decision in which it determined that "the accusation of patient abuse [was] not substantiated." Def's Stmt. of Facts. at ¶ 20. However, the ABI also concluded that Fleeger had "acted unprofessionally," and recommended that "appropriate management staff should review the behavior of Ms. Fleeger ..." *Id*. at ¶ 21.

On or about March 20, 2002, Fleeger filed a formal complaint of employment discrimination. *Id*. at ¶ 3. In her complaint, Fleeger alleged that the VA subjected her to "reprisal" after she "filed complaints in 2001 and Jan (*sic*) 2002 about work conditions." *Id*.

After the ABI completed its investigation, on or about May 30, 2002, Fleeger was re-assigned from the file room to a position as a "float" nurse in the VA's Transitional Care Program. *Id*. at ¶ 22. On or about June 5, 2002, the acting Medical Director determined that in light of the ABI's conclusions regarding Fleeger, the management of the nursing department should review Fleeger's unprofessional behavior and take appropriate measures. *Id*. at ¶ 23. Later that month, on or about June 17, 2002, Fleeger was informed that the ABI had cleared her

of the charge of patient abuse. *Id*. at ¶ 24.

Fleeger went on bereavement leave from June to mid-August of 2002. *Id*. at ¶ 25. On or about August 30, 2002, the VA notified Fleeger that her periodic step increase in salary would be temporarily withheld due to unsatisfactory performance. *Id*. at ¶ 26. According to the affidavit of Carol Niggel, R.N. ("Niggel"), who was Fleeger's supervisor at the time, the VA temporarily withheld Fleeger's periodic step increase until she successfully completed a performance improvement plan and received a satisfactory rating; once her performance improved to a satisfactory level, her step increase would be reflected in the next pay period. *Id*. at ¶¶ 28-29.

Under the terms of the performance improvement plan, Fleeger was to have weekly meetings with Niggel to review her performance. *Id*. at ¶ 31. Fleeger and Niggel met three times for five or ten minutes per meeting. *Id*. at ¶ 33. According to Niggel's affidavit, their brief meetings revealed no problems, and Fleeger was doing well. *Id*. However, on or about October 11, 2002, Fleeger resigned from her R.N. position at the Butler VA and took a nursing job at another local hospital. *Id*. at ¶ 34. After she left the VA, Fleeger received a $5,000 bill from the VA for "advanced sick leave" taken by Fleeger during her period of mourning. Fleeger depo. at 108.

By Final Agency Decision dated April 25, 2003, the VA denied Fleeger's March 20, 2002 discrimination complaint and concluded that she had not established by a preponderance of the evidence that the agency had discriminated against her. *Id*. at ¶ 4. Fleeger subsequently filed an Amended Complaint in which she alleges two claims for retaliation, in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq*. (Count I) and the Civil Service Reform Act of 1978, as amended by the Whistleblower Protection Act of 1989 (codified in various sections of Title 5) (Count II). Defendant has moved for summary judgment on both counts of the Amended Complaint.

Standard of Review

Rule 56(c) of the Federal Rules of Civil Procedure reads, in pertinent part, as follows:

[Summary Judgment] shall be rendered forthwith if the pleadings, depositions,

answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.

In interpreting Rule 56(c), the United States Supreme Court has stated:

The plain language . . . mandates entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. In such a situation, there can be "no genuine issue as to material fact," since a complete failure of proof concerning an essential element of the non-moving party's case necessarily renders all other facts immaterial.

*Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986).

An issue of material fact is genuine only if the evidence is such that a reasonable jury could return a verdict for the non-moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The court must view the facts in a light most favorable to the non-moving party, and the burden of establishing that no genuine issue of material fact exists rests with the movant. *Celotex*, 477 U.S. at 323. The "existence of disputed issues of material fact should be ascertained by resolving all inferences, doubts and issues of credibility against the moving party." *Ely v. Hall's Motor Transit Co.*, 590 F.2d 62, 66 (3d Cir. 1978) (*quoting Smith v. Pittsburgh Gage & Supply Co.*, 464 F.2d 870, 874 (3d Cir. 1972)). Final credibility determinations on material issues cannot be made in the context of a motion for summary judgment, nor can the district court weigh the evidence. *Josey v. John R. Hollingsworth Corp.*, 996 F.2d 632 (3d Cir. 1993); *Petruzzi's IGA Supermarkets, Inc. v. Darling-Delaware Co.*, 998 F.2d 1224 (3d Cir. 1993).

When the non-moving party will bear the burden of proof at trial, the moving party's burden can be "discharged by 'showing' -- that is, pointing out to the District Court -- that there is an absence of evidence to support the non-moving party's case." *Celotex*, 477 U.S. at 325. If the moving party has carried this burden, the burden shifts to the non-moving party who cannot rest on the allegations of the pleadings and must "do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986); *Petruzzi's IGA Supermarkets*, 998 F.2d at 1230. When the non-

moving party's evidence in opposition to a properly supported motion for summary judgment is "merely colorable" or "not significantly probative," the court may grant summary judgment. *Anderson*, 477 U.S. at 249-50.  However, a party which opposes summary judgment must do more than rest upon mere allegations, suspicions, general denials, and vague statements.

In federal employment discrimination cases, the familiar *McDonnell Douglas*[2] formulation regarding the appropriate burdens of proof and allocation of production of evidence govern and guide the analysis of the evidence presented on a motion for summary judgment. Under *McDonnell Douglas*, the plaintiff must establish a *prima facie* case of discrimination; if this burden is met, the defendant must then articulate some legitimate, nondiscriminatory reason for the employee's treatment.  *McDonnell Douglas*, 411 U.S. at 802.  If the defendant articulates a legitimate, nondiscriminatory reason for the employee's treatment, then the plaintiff must demonstrate that the defendant's stated reasons were a pretext for unlawful action.  *Id*. at 804. The *prima facie* case under *McDonnell Douglas* "is not intended to be onerous." *Sempier v. Johnson & Higgins*, 45 F.3d 724, 728 (3d Cir.), *cert. denied*, 515 U.S. 1159 (1995).  The *prima facie* case raises an inference of discrimination because the courts presume that the challenged acts, if otherwise unexplained, are "more likely than not based on the consideration of impermissible factors."  *Id*.

Discussion

A.   Plaintiff's Title VII Retaliation Claim

Under Title VII it is unlawful for an employer "to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a).  Title VII also prohibits retaliation by an employer. Specifically, Title VII, 42 U.S.C. § 2000e-3(a), provides as follows:

It shall be an unlawful employment practice for an employer to discriminate

---

[2].   *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973).

against any of his employees ... because [the employee] has opposed any practice made an unlawful employment practice under this Subchapter, or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this Subchapter.

To establish a *prima facie* case of retaliation, Fleeger must demonstrate that: 1) she engaged in conduct protected by Title VII; 2) the employer took an adverse action against her either after or contemporaneous with the protected activity; and 3) a causal link exists between her protected conduct and the employer's adverse action. *Weston v. Pennsylvania*, 251 F.3d 420, 430 (3d Cir. 2001). *See also Aman v. Cort Furniture Rental Corp.*, 85 F.3d 1074, 1085 (3d Cir. 1996) (citation omitted).

Defendant contends that Fleeger cannot establish a *prima facie* case of retaliation under Title VII because she cannot establish the first and third elements of her cause of action. Brief at 13. The Court agrees.

Plaintiff claims that a complaint of discrimination that she filed with the EEOC in 1999 and a complaint of retaliation that she later filed with the EEOC in March of 2002 were protected activities under Title VII. *See* Pltf's Brief at 14; Fleeger depo. at 85-86. Fleeger testified at her deposition that the substance of the 1999 complaint was that the VA discriminated against her based on her diabetes. Specifically, Fleeger alleged that she was denied tuition reimbursement while she completed her bachelor's degree due to her diabetic condition. *See* Fleeger depo. at 85-86. There is a significant problem with Plaintiff's theory in that the Amended Complaint states a claim for retaliation pursuant to Title VII, but Title VII has nothing to do with discrimination based upon an alleged disability.[3] Indeed, the Court has found no evidence of record which connects any EEOC complaint or other action by Plaintiff to any conduct prohibited by Title VII. *See* 42 U.S.C. § 2000e-3(a) (Title VII prohibits retaliation by an employee who "has opposed any practice made an unlawful employment practice *under this Subchapter*, or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing *under this Subchapter*."). For example, there is no

---

[3] *See* Amended Complaint at ¶¶ 3-4, 6.

evidence that Fleeger thought that the VA had discriminated against her (or anyone else) based on gender, race, national origin, or any other protected classification under Title VII. If anything, Plaintiff's complaints to the EEOC in 1999 regarding alleged discrimination due to her disability *might* be protected by Title I of the Americans with Disabilities Act, 42 U.S.C. § 12101 *et seq.*, but complaints about discrimination against diabetics are not protected under Title VII. *See* 42 U.S.C. § 12203 (anti-retaliation provision of the ADA).

The substance of Fleeger's EEOC complaints in early 2002 is that the VA retaliated against her based on her various e-mails regarding working conditions at the VA to the President, Senator Santorum, and other public officials. Fleeger depo. at 89. Fleeger also testified at her deposition that she was subjected to retaliation "based on the complaints I had made to the nurse managers [regarding understaffing] back in the end of '01." *Id*. Like Fleeger's 1999 EEOC complaint about her diabetes, the Court finds and rules that Fleeger's e-mails to public officials and complaints to supervisors regarding an unbearable workload at the VA hospital, and any reprisal that theoretically could have occurred as a result, are not within the parameters of protected activity under Title VII. There is simply no relationship between the subject matter of these complaints and what is protected and/or prohibited by Title VII.

The Court also finds and rules that Fleeger's EEOC complaint filed in March of 2002 is not protected activity. The filing of an EEOC complaint is ordinarily considered to be protected activity, but the Court cannot consider Fleeger's March 2002 complaint to be protected activity because no one could reasonably believe that the incidents about which Fleeger complained violated Title VII. *Clark County Sch. Dist. v. Breeden*, 532 U.S. 268, 270 (2001). Accordingly, the Court finds and rules that Plaintiff cannot establish that she engaged in protected activity within the meaning of Title VII.

Even assuming, *arguendo*, that Plaintiff has demonstrated *prima facie* evidence of protected activity, her Title VII retaliation claim nevertheless fails because she cannot establish a causal link between her various EEOC complaints and 1) her reassignment to the file room, 2) her placement as a "float" nurse, 3) the denial of her periodic step pay increase, 4) the performance improvement plan, 5) the denial of the in-service opportunity; and/or 6) the $5,000

bill that she received for "advanced sick leave." Our Court of Appeals has held that "the mere fact that adverse employment action occurs after a complaint will ordinarily be insufficient to satisfy the plaintiff's burden of demonstrating a causal link between the two events." *Krouse,* 126 F.3d at 502 (3d Cir. 1997) (*quoting Robinson v. City of Pittsburgh*, 120 F.3d 1286, 1302 (3d Cir.1997)). A temporal relationship between protected activity and an adverse employment action "will be insufficient to establish the necessary causal connection when the temporal relationship is not 'unusually suggestive.'" *Farrell v. Planters Lifesavers Co.*, 206 F.3d 271, 280 (3d Cir. 2000) (citations omitted). However, proof of a causal link "is not limited to timing [of the two events] and demonstrative proof, such as actual antagonistic conduct or animus. Rather, it can be other evidence gleaned from the record as a whole from which causation can be inferred." *Id.* at 281.

Based on the evidence of record, the Court finds and rules that Fleeger cannot establish a causal connection between any "protected activity" and any adverse employment action taken by Defendant. First, the time gap between Fleeger's 1999 complaint and her transfer to the file room in January of 2002 is far too remote to establish a causal link. The time gap between Fleeger's complaints to supervisors and e-mails regarding staffing, which were sent in December of 2001 and early January of 2002 (just before the incident with the patient) and her transfer to the file room is indeed short, and would be "unusually suggestive" *if* Fleeger's e-mails and complaints to her supervisors were protected activity under Title VII, but said complaints are simply not protected activity under Title VII. Assuming that Fleeger's March 2002 complaint was a protected activity, there is no evidence from which one can infer a causal connection with any adverse employment action that occurred thereafter.[4] Additionally, the Court has thoroughly reviewed Fleeger's deposition testimony, as well as all other evidence of record, and nothing

---

[4] Although the record is not entirely clear with respect to the exact date, Fleeger testified that she noticed that her periodic step increase was withheld while she was still in the file room, *i.e.*, before May 30, 2002. However, Fleeger herself testified that the withholding of her periodic step increase was in response to the investigation of alleged patient abuse. *See* Fleeger depo. at 67-68.

contained therein is sufficient for a reasonable fact finder to find a causal connection between Fleeger's numerous internal and external complaints and her assignment to the file room, the denial of her periodic step increase, her assignment to a "float nurse" position, her transfer to TCU-A to work as "charge nurse," her supervision by and performance improvement meetings with Carol Niggel, her receipt of a $5,000 bill from the VA, or any other action that Fleeger styles as an adverse employment action.

B.   Plaintiff's Claim Under the Whistleblower Protection Act of 1989 (WPA)

The WPA governs claims for retaliation against whistleblowing activities by federal employees against their federal employers. *See, e.g. Watson v. Dept. of Justice*, 64 F.3d 1524, 1527-30 (Fed. Cir. 1995). The WPA provides, in relevant part, as follows:

> Any employee who has authority to take, direct others to take, recommend, or approve any personnel action, shall not ... take or fail to take ... a personnel action with respect to any employee or applicant for employment because of ... any disclosure of information by an employee or applicant which the employee or applicant reasonably believes evidences--
> (i) a violation of any law, rule, or regulation, or
> (ii) gross mismanagement, a gross waste of funds, an abuse of authority, or a substantial and specific danger to public health or safety ...

5 U.S.C. § 2302(b).

To establish a *prima facie* violation of the WPA, Fleeger must adduce sufficient evidence that 1) she made a "protected disclosure" within the meaning of the WPA; 2) subsequent to the protected disclosure she was subject to an adverse personnel action; and 3) the protected disclosure played a role in, or was a contributing factor to, the personnel action taken against her. *Carr v. Social Security Admin.*, 185 F.3d 1318, 1332 (Fed. Cir. 1999); 5 U.S.C. §§ 1214(b)(4)(B)(ii); 1221(e)(2). There is *prima facie* evidence that Fleeger reasonably believed that conditions at the VA amounted to "gross mismanagement," and she may well have reasonably believed that said conditions amounted to a violation of a "law, rule, or regulation," or "a substantial and specific danger to public health or safety." Therefore, there is *prima facie* evidence of a "protected disclosure" by Fleeger. Additionally, there were a number of adverse personnel actions subsequent to said disclosures. Finally, although there is considerable

10

evidence that the allegation of patient abuse and Fleeger's unprofessional behavior were the predominant factors in Fleeger's assignment to the file room and subsequent adverse employment actions, a reasonable fact finder could find that her protected disclosures played a role in, or were a contributing factor to, one or more of the adverse personnel actions taken against Fleeger. Therefore, a fact finder must determine whether Fleeger's complaints were a contributing factor in the adverse employment actions, and whether the VA can demonstrate "by clear and convincing evidence that it would have taken the same personnel action in the absence of such disclosure." 5 U.S.C. § 1214(b)(4)(B)(ii). Accordingly, since there is a genuine issue of material fact in this regard, the Court will decline to grant summary judgment in favor of Defendant on Count II of Plaintiff's Amended Complaint.

### Conclusion

For the reasons hereinabove stated, the Court will grant summary judgment in favor of defendant Anthony J. Principi on Count I of Fleeger's Amended Complaint. As to Count II Defendant's Motion for Summary Judgment will be denied. An appropriate Order follows.

McVerry, J.

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| SUSAN FLEEGER, )<br>)<br>Plaintiff, )<br>)<br>v. )<br>) 2:03cv735<br>ANTHONY J. PRINCIPI, SECRETARY )<br>OF VETERAN'S AFFAIRS, )<br>)<br>Defendant. ) | |

## ORDER OF COURT

AND NOW, this 15th day of August, 2005, in accordance with the foregoing Memorandum Opinion it is hereby **ORDERED, ADJUDGED and DECREED** that Defendant's Motion for Summary Judgment (*Document No. 23*) is GRANTED IN PART AND DENIED IN PART as follows:

    a.     Defendant's Motion for Summary Judgment is **GRANTED** as to Plaintiff's retaliation claims brought under Title VII (Count I); and

    b.     Defendant's Motion for Summary Judgment is **DENIED** as to Plaintiff's claims brought under the Civil Service Reform Act of 1978, as amended by the Whistleblower Protection Act of 1989 (Count II).

                                      BY THE COURT:

                                      s/ Terrence F. McVerry
                                      United States District Court Judge

cc:  Neal A. Sanders, Esquire
Law Office of Neal Alan Sanders
1924 North Main Street Extension
Butler, PA 16001

Albert W. Schollaert, AUSA
Email: albert.schollaert@usdoj.gov

Paul D. Kovac, AUSA
Email: paul.kovac@usdoj.gov

Mark Frasinelli, Esquire
Department of Veterans Affairs
VA Pittsburgh Healthcare System
7180 Highland Drive
Pittsburgh, PA 15206-1297